J-A29026-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN RE: IRREVOCABLE INTER VIVOS TRUST OF PHILOMENE HRUTKAY, DATED FEBRUARY 24, 2001 | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: MICHAEL S. HRUTKAY, TRUSTEE | No. 405 WDA 2016 |

Appeal from the Order February 22, 2016
In the Court of Common Pleas of Washington County
Orphans' Court at No(s): 63-12-0799

BEFORE: DUBOW, J., MOULTON, J., and MUSMANNO, J.

MEMORANDUM BY MOULTON, J.:     **FILED FEBRUARY 2, 2017**

Michael S. Hrutkay appeals from the February 22, 2016 order entered in the Washington County Court of Common Pleas terminating the Irrevocable Inter Vivos Trust of Philomene Hrutkay, dated February 24, 2001 ("Trust"). Because the trial court, by its admission, entered an incorrect order, we vacate and remand.

Philomene Hrutkay executed the Trust on February 24, 2001, appointing her son Michael Hrutkay as Trustee. The Trust made Michael a remainder beneficiary, along with Philomene's daughters Michelene Sheehy[1]

---

[1] The record reflects a number of different spellings of this name, including "Michalene" and "Michaleen." For clarity, we will refer to Ms.

*(Footnote Continued Next Page)*

and Gloria Hrutkay. Under the Trust, the Trustee was to pay, as he saw fit, so much of a specific portion of the Trust income to Philomene for "items or services not covered or provided by public governmental benefits." Upon Philomene's passing and after the Trust paid for her burial expenses, the Trust directed the Trustee to "transfer[] and deliver[] free of trust to the remaindermen beneficiaries . . . all the principal and undistributed income of the Trust Estate exclusive of [a portion of the burial trust] and the portion of the remainder of the Trust Estate for the benefit of Gloria Hrutkay then in possession of the Trustee." Trust, 2/24/01, at 8. The Trustee was to divide "[t]he remainder of the Trust Estate . . . into three (3) as nearly equal shares as possible . . . . [And] distribute one share to Michael, one share to . . . Michelene . . . , and one share to my Trustee Michael Hrutkay to be held in trust for . . . Gloria Hrutkay, in accord with the provisions of Paragraph 3.09.6 of this Trust Agreement." *Id.* at 8-9. Paragraph 3.09.6 provides:

> 3.09.6 During the lifetime of Gloria Hrutkay and for so long as she is domiciled at [Philomene's home], or any replacement place of domicile, including a personal care facility, but excluding a skilled nursing care facility, hospital, extended care facility, or other similar facility, the Trustee may pay so much of the income and principal of the portion of the residue of the Trust Estate passing to [Michael] for the benefit of Gloria Hrutkay, as [Michael], in his sole and absolute discretion shall determine to be advisable for the support, comfort and happiness of Gloria Hrutkay.

*(Footnote Continued)* ——————————

Sheehy as "Michelene." Similarly, because several of the litigants share the same last name, we will refer to the parties by their first names.

*Id.* at 10.  Paragraph 3.11 states that, upon Gloria's death, the remaining portion of the Trust Estate held in trust for the benefit of Gloria . . . shall go and be by the Trustee, transferred and delivered free of trust to the reaminderman beneficiaries of this Trust."  *Id.* at 12.  The trust also grants the Trustee the power "to continue to hold any and all property (including [Philomene's home]) received by [him] . . . if and as long as [he], in exercising reasonable prudence, discretion, and intelligence, considers that retention is in the best interests of the Trust."  *Id.*

Philomene died on July 8, 2001.  Upon Philomene's death, Michael did not pay himself or Michelene their respective shares of the remainder.  On July 12, 2012, Michael, on behalf of himself as trustee (not on behalf of himself as a beneficiary) and Gloria,[2] filed a complaint for declaratory judgment, alleging that he and Gloria still resided in Philomene's home and that Michelene had demanded her share of the Trust remainder, including her portion of Philomene's home.  In his prayer for relief, Michael asked the trial court to interpret the Trust and determine whether Philomene's home was still "impressed with the terms of the trust" and whether Philomene intended to allow Michael and Gloria to live in her home until Gloria is no

_____

[2] Gloria Hrutkay is disabled; she and Michael currently reside in Philomene's home.

longer capable of living there.[3] Complaint for Declaratory Judgment, 7/12/12, at 4-5. Michelene answered the complaint with new matter on July 25, 2012. In her new matter, Michelene asserted that she was entitled to a one-third share of the Trust remainder upon Philomene's death in 2001 and the Trust did not expressly state or imply that Philomene, after her death, intended to allow Michael and Gloria to continue living in her home. On August 2, 2012, the trial court entered a consent decree directing Michael to file an account of the Trust on or before October 12, 2012.

During the next three years, the parties filed numerous documents, including partial accounts and addenda, a motion for summary judgment and responses thereto, and motions for continuances. At one point, the parties attempted unsuccessfully to negotiate a settlement, resulting in a motion to enforce settlement that the trial court denied. The result of these filings was a submission to the trial court, without hearing, on the issues raised by both Michael and Michelene.

On February 22, 2016, the trial court issued a memorandum and order, decreeing that, upon Philomene's death, the trust terminated and Michelene was entitled to a one-third share of the remainder. **See** Memorandum & Order, 2/22/16, at 5 ("Mem."). Michael filed a timely notice

_____

[3] On July 12, 2012, the trial court issued a decree ordering Michael to serve a copy of the complaint and decree on Michelene and allowing Michelene 30 days from the date of service to respond.

of appeal. After ordering and receiving a concise statement of errors complained of on appeal, on June 24, 2016, the trial court issued an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) ("Rule 1925(a)").[4] *See* Trial Opinion Pursuant to Pa.R.A.P. 1925(b), 6/24/16 ("1925(a) Op.").

Before considering the issues raised on appeal, we must address a threshold issue regarding the trial court's order. In its Rule 1925(a) opinion, the trial court admitted that it did not intend to terminate the entire trust. Rather, the trial court stated that it intended to terminate the trust only with respect to Michelene's one-third share:

> As the Court recognizes that Gloria's share continues in trust for her, to the extent this Court's Order of February 22, 2016 terminates the entire trust, this is an error. The Trust, the Court contends, continues only for Gloria's one-

---

[4] Michael raises three issues on appeal:

A. WHETHER THE LOWER COURT ABUSED ITS DISCRETION IN DEVIATING FROM STATUTORY LAW AND FAILING TO PROVIDE ADEQUATE RESPONSES UNDER THE UNIFORM DECLARATORY JUDGMENT ACT?

B. WHETHER THE LOWER COURT ABUSED ITS DISCRETION IN TERMINATING THE TRUST IN DEVIATION OF THE DECEDENT'S INTENT?

C. WHETHER THE LOWER COURT COMMITTED AN ERROR OF LAW IN INTERPRETING THE TRUST CONTRARY TO APPLICABLE LAW?

Michael's Br. at 5 (suggested answers omitted).

third share (and for her funeral expenses of $8,000 as set forth in Schedule A of the Trust).

\* \* \*

The Order stated:

"AND NOW, this 22nd day of February 2016, it is DECREED that upon the date of death of Philomene Hrutkay the Philomene Hrutkay Irrevocable Trust terminated and Michelene Sheehy was entitled to a one-third share. Unless the parties can amicably resolve the accounting of the Trust the Court will schedule a hearing upon the request of either party."

The Order should have stated:

"AND NOW, this 22nd day of February 2016, it is DECREED that upon the date of death of Philomene Hrutkay the Philomene Hrutkay Irrevocable Trust **was terminated as to the share of** Michelene Sheehy and she was entitled to a one-third share. Unless the parties can amicably resolve the accounting of the Trust the Court will schedule a hearing upon the request of either party."

1925(a) Op. at 4, 6 (emphasis in original).[5]

We must vacate the order and remand for entry of an appropriate order or decree. While a trial court "upon notice to the parties may modify or rescind any order within 30 days after its entry," 42 Pa.C.S. § 5505, a trial court generally may not modify an order once an appeal is taken. **See** Pa.R.A.P. 1701(a) ("Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court . .

_____

[5] Despite admitting its error, the trial court asks us to affirm the rationale of its decision as written in its memorandum of February 22, 2016, presumably because its memorandum was written with the intent to terminate the trust only with respect to Michelene's share. **See** 1925(a) Op. at 10.

- 6 -

. may no longer proceed further in the matter."). Pennsylvania Rule of Appellate Procedure 1701(b) contains some exceptions that allow modification of an order in limited circumstances, including "correct[ion of] formal errors in papers relating to the matter." *Id* at (b)(1). Further, Rule 1925(a) allows a trial court "to write an opinion on the legal merits of the issues and to suggest what relief it would have granted had it been able to take such action in a timely fashion." *K-B Bldg. Co. v. Hermara Assocs., Inc.*, 709 A.2d 918, 919 (Pa.Super. 1998).

Here, the trial court erroneously terminated the trust rather than terminating only Michelene's share. Such a change does not fall within any Rule 1701 exception. *See Manack v. Sandlin*, 812 A.2d 676, 682 (Pa.Super. 2002) (concluding that "[a] major substantive change, such as the total withdrawal of an order relative to a motion of record[,] does not constitute a corrective order within the inherent powers of the trial court or the court's statutory authority"). Further, the trial court could not change the order once Michael filed his notice of appeal; the trial court was limited to explaining its error in its Rule 1925(a) opinion. Considering the trial court's admission of its error and its inability to change the order, we vacate the February 22, 2016 order and remand to the trial court for entry of an appropriate order or decree.[6]

---

[6] In light of our ruling, we decline to address Michael's issues on appeal, as entry of a new order or decree may address or render moot a
*(Footnote Continued Next Page)*

Decree vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/2/2017

*(Footnote Continued)* ———————————

number of Michael's issues and, in the current procedural posture, we would be rendering an advisory opinion on an order or decree not yet entered. *See* ***Stuckley v. Zoning Hearing Bd.***, 79 A.3d 510, 519 (Pa. 2013) ("Where the issues in a case are moot, any opinion issued would be merely advisory and, therefore, inappropriate.").

Further, in its Rule 1925(a) opinion, the trial court stated that it will address the issues related to the home once the trust account is complete and the parties have developed a record on both Michelene's exceptions to the account and Michael's argument that laches and estoppel prevent Michelene from asserting an interest in the home. 1925(a) Op. at 9. According to the trial court, delaying these proceedings is appropriate because the laches and estoppel arguments would "affect the amount to be distributed to [Michelene]," not whether a distribution should be made. ***Id.*** Michael argues that "given their salient impact on the outcome of the case," the trial court should have considered laches and estoppel when it rendered the February 22, 2016 decision. Michael's Br. at 28-30. Considering the current procedural posture, we decline to address these issues. A final account and developed record will allow the trial court to explore in depth the issues regarding the home and make a final adjudication. ***See In re Edwards' Estate***, 62 A.2d 763, 766 (Pa.Super. 1948) ("The adjudication of a partial account simply awards distribution on the fund then in court, and is not a final determination of the rights of the parties.") (quoting ***In re Reed's Estate***, 85 A. 138, 140 (Pa. 1912)).

- 8 -